UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Krystof B.,[1] | Case No. 24-cv-2634 (ECT/SGE) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Frank Bisignano, *Commissioner of Social Security*, | |
| Defendant. | |

This matter is before the Court on Plaintiff Krystof B.'s ("Mr. B's") Complaint. (Dkt. 1.) (*See* Pl.'s Br. (Dkt. 9); Comm'r Br. (Dkt. 11).) Mr. B argues that the Commissioner of Social Security's denial of his application for disability benefits should be reversed because the Administrative Law Judge ("ALJ") committed significant errors of law, and the decision was not based on substantial evidence. For the reasons set forth below, the Court concludes that Mr. B's requested relief should be denied, the Commissioner's motion should be granted, and this case should be dismissed.

## BACKGROUND

The Social Security regulations set forth a sequential method of evaluating disability claims. 20 C.F.R. §§ 404.1520(a), 416.920(a). The first step is to determine whether the

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name, only his first name and last initial are provided.

1

claimant engages in substantial gainful activity. At the second step, the ALJ determines whether the claimant suffers from a severe impairment—i.e., an impairment that significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claim is denied. If so, at the third step, the ALJ determines whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment meets or equals a listed impairment, then the claim will be granted. If not, at the fourth step, the ALJ determines whether the claimant has an impairment which precludes the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). This includes evaluating the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work on a sustained basis despite limitations from any impairments. If the claimant's impairments do not preclude performance of past relevant work, then the claim will be denied. If the claimant's impairments do preclude performance of past relevant work, then at the fifth step, the ALJ determines whether the claimant's impairments prevent the performance of any other work, considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).

As of the date last insured, Mr. B was 53 years old, or "closely approaching advanced age." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.00(d). Pursuant to social security regulations, a claimant with Mr. B's age, level of education, and previous work experience whose maximum sustained work capability is *limited* to sedentary work is considered disabled. *See* POMS DI 5025.035, Table 1 (emphasis added). Here, Mr. B filed

an application for Social Security Disability Insurance on April 3, 2019. The Agency denied his claim initially and on reconsideration. Thereafter, Mr. B. requested a hearing before an ALJ. Mr. B appeared for an in-person hearing on February 16, 2023, wherein Vocational Expert (VE) Kenneth Ogren testified, and for a supplemental in-person hearing on July 12, 2023, wherein VE Jesse Ogren testified. Thereafter, the ALJ issued a written decision concluding Mr. B was not disabled. The Appeals Council denied the appeal on June 7, 2024, and this action followed.

## ANALYSIS

### I. Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, . . . the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

The substantial-evidence standard is more deferential. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Under this standard, courts should not reverse the Commissioner's findings merely because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir.

3

2015). Instead, a court will reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## II. ALJ's Decision

The ALJ began her analysis by determining that Mr. B's relevant earnings did not constitute substantial gainful activity and that he had multiple impairments that were deemed "severe" under the regulations. (R. 3124.) At step three, the ALJ determined that Mr. B's impairments did not meet or medically equal the criteria of any Listing described in 29 C.F.R. Part 404, Subpart P, Appendix 1. (R. 3125-27.)

At step four, the ALJ determined that Mr. B had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), except that he was further limited to:

> [o]ccasionally balance, stoop, kneel, crouch and crawl; occasionally climb ramps/stairs; no climbing ladders/ropes/scaffolds; no exposure to potential workplace hazards such as moving machinery or unprotected heights; he is capable of simple routine tasks that do not involve fast paced production requirements (defined as work that requires more than frequent handling fingering reaching bilaterally); [and could have] occasional interaction with the coworkers and supervisors and no interaction [with the] general public.

(R. 3128.) Using this RFC, the ALJ determined that Mr. B was incapable of performing his past relevant work. (R. 3132.)

At step five, the ALJ determined that Mr. B could still perform other jobs that exist in significant numbers in the national economy. (R. 3133.) In making this determination, the ALJ relied on the testimony of vocational expert ("VE") Jesse Ogren from the supplemental hearing. (R. 3133-34.) Mr. Ogren testified that a hypothetical claimant with

Mr. B's RFC and work experience could perform unskilled, light work as a garment bagger and a hand packager, totaling about 158,000 jobs in the national economy. (R. 27.) He did *not* opine that Mr. B was limited to only sedentary work. The ALJ found Mr. Ogren's testimony consistent with the Dictionary of Occupational Titles ("DOT") and with Mr. Ogren's education and work experience. (R. 26-27, 3133-34.) Based on Mr. Ogren's testimony, the ALJ concluded that Mr. B was capable of working jobs that existed in significant numbers in the national economy and therefore was not disabled. (R. 3134.)

### III. ALJ's determination is supported by substantial evidence.

Mr. B argues that the ALJ erred in relying on "conflicting" VE testimony. Specifically, he argues that VE Jesse Ogren's testimony cannot serve as substantial evidence that the identified jobs were "light" under the DOT, because it was inconsistent with the earlier limited testimony of VE Kenneth Ogren, which the ALJ did not consider. (R. 15, 683.)

When determining whether a claimant is disabled at step five, "[a]n ALJ may rely on a vocational expert's response to a 'properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's [RFC] can perform.'" *Kraus v. Saul*, 988 F.3d 1019, 1026 (8th Cir. 2021) (quoting *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004)). "When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with" relevant regulations, and courts "review his decision under the deferential substantial evidence standard." *Welsh*

*v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014). In other words, a VE's testimony based on a properly phrased hypothetical question constitutes substantial evidence. *Kraus*, 998 F.3d at 1026. Where VE testimony conflicts with the DOT, the VE testimony can still serve as substantial evidence sufficient to support an ALJ determination so long as the ALJ addresses the conflict. *See Young v. Apfel*, 221 F.3d 1065, 1070 (8th Cir. 2000).

The Court finds Mr. B's argument about the conflicting VEs' testimony unpersuasive. At the supplemental hearing, VE Jesse Ogren testified that a hypothetical individual with Mr. B's RFC could perform "light" work as defined by the DOT. (R. 23-44.) Mr. B argues that Jesse Ogren's testimony that "light" work also included semi-sedentary "bench" work requires that Mr. B be found presumptively disabled. (Pl. Br. at 18.) But the DOT definitions "are simply generic job descriptions that offer approximate minimum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (cleaned up). The DOT itself cautions that these descriptions are inexact. *See Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (stating that DOT job descriptions "may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities"). The testimony of vocational experts exists to specify the requirements of particular jobs and give ALJs a basis to determine whether a person with a given RFC could perform a specific job.

VE Jesse Ogren testified that "garment bagger" and "hand packer" were light jobs according to the DOT and his education and experience. Specifically, he testified that the lifting requirements and amount of activity required would be more descriptive of light

work than sedentary work. (R. 36.) No one opined that Mr. B was limited to sedentary work.

The Eighth Circuit has consistently held that if "substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony." *Moore*, 623 F.3d at 604 (citing *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (holding that where the VE identified jobs the hypothetical individual could perform, and nothing suggested the VE ignored the reasoning limitations in determining suitable jobs, the ALJ properly relied on the testimony)); *see also Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (citing the above). The ALJ is not required to "obtain a reasonable explanation when the [VE] simply testifies to information not found in the DOT" if that information "does not conflict with" the DOT. *Courtney*, 894 F.3d at 1003. Mr. B does not challenge the ALJ's RFC determination, and the ALJ's hypothetical question to VE Jesse Ogren incorporates Mr. B's RFC. (*See* R. 26-27.) The ALJ determined that Jesse Ogren's testimony was "consistent with the information contained in the [DOT]" and concluded that Mr. B, through the date last insured, was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 3134.)

Next, Mr. B argues an ALJ must resolve any conflict between the testimonies of multiple vocational experts. Case law establishes procedures for ALJs to resolve conflicts between VE testimony and the DOT. *See, e.g.*, *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (noting that ALJ is required to ask VE whether his testimony conflicts with the

7

DOT and obtain an explanation). Mr. B argues that a similar procedure should apply when the ALJ faces conflicting testimony from two different vocational experts, Kenneth and Jesse Ogren.

The procedural history of this case is, if not unique, then certainly uncommon. At the initial hearing, VE Kenneth Ogren testified via telephone, but his connection failed before his testimony and cross-examination could be completed. Following the hearing's conclusion, the ALJ sent Kenneth Ogren written interrogatories to complete his testimony. After the ALJ received Kenneth Ogren's responses to those interrogatories, she scheduled a supplemental hearing. (See R. 669, 675.) Before the supplemental hearing, the ALJ informed Mr. B's counsel that Kenneth Ogren would not testify at the supplemental hearing and instead, VE Jesse Ogren would testify. (*See* R. 683.) Mr. B's counsel objected to a new vocational expert testifying. (R. 682.) The ALJ overruled the objection and noted that it would be "as it [Ken Ogren's] evidence doesn't exist, essentially," and that she would not "base [her] decision on that evidence." (R. 14.) The supplemental hearing occurred on July 21, 2023, and the ALJ's decision relied only on the testimony of VE Jesse Ogren. (See R. 3133-34.) In her opinion, the ALJ repeated that she would only base her opinion on the most recent vocational expert testimony by Jesse Ogren . . . in order to allow for adequate cross examination at the hearing." (R. 3121.)

Mr. B argues that the testimonies of the two VEs conflict in such a way that muddies the record as to whether the jobs that VE Jesse Ogren identifies are classified as "light" or "sedentary" jobs, and as a result, the ALJ's decision is not supported by substantial evidence. (Pl. Br. 14-15.) But the VEs' testimonies do not present a conflict. In response

8

to the ALJ's interrogatories, Kenneth Ogren testified that a limitation to standing and walking a maximum of four hours in an eight our workday reduces work from light to sedentary. (R. 663.) Under direct questioning at the supplemental hearing, Jesse Ogren testified that the jobs that he identified—garment sorter, hand packager, and labeler—did not require the worker to be standing. (R. 31.) Jesse Ogren testified that, based on his education and experience, these jobs were light because the requirements were beyond the sedentary limitations. (R. 36.) Thus, the testimony showed that the jobs Jesse Ogren identified were not "sedentary" because other aspects of the jobs required more than sedentary effort—specifically the lifting requirements and the amount of activity. (R. 36.) Nothing in Kenneth Ogren's testimony contradicts Jesse Ogren's as to the requirements of the garment sorter, hand packager, and labeler positions, and the ALJ determined that Jesse Ogren's testimony is consistent with the information in the DOT. There is no conflict between Kenneth Ogren's testimony and Jesse Ogren's testimony that undermines the ALJ's determination.

Even presuming that the VEs' testimony conflicted, Mr. B's argument is unpersuasive. The ALJ explicitly disregarded the testimony of VE Kenneth Ogren and relied only on VE Jesse Ogren's testimony. (*See* R. 3121, 3133-34.) VE Jesse Ogren testified whether a hypothetical individual with Mr. B's RFC could perform light work as defined by the regulations, and he identified DOT jobs with 158,000 jobs in the national economy. (R. 27.) Mr. B fails to identify any conflict between this testimony and the DOT. And where no such conflict exists, the ALJ can properly rely on the VE testimony. *See Moore*, 623 F.3d at 604 (holding that where "substantial evidence supports the ALJ's

9

phrasing of the hypothetical to the VE, and there was no conflict between the VE's testimony and the DOT, the ALJ properly relied on the testimony.").

Based on the foregoing, substantial evidence supports the ALJ's decision. Accordingly, this Court recommends that the ALJ's decision be affirmed.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMEND** that:

1. Mr. B's request for relief (Dkt. 9) be **DENIED**;

2. The Commissioner's request for relief (Dkt. 11) be **GRANTED**; and

3. This matter should be **DISMISSED.**

Date: July 17, 2025

> *s/Shannon G. Elkins*
> SHANNON G. ELKINS
> United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.